13574

SUTTON v. CONTINENTAL CASUALTY CO.

(167 S. E., 647)

374

*Messrs. Lee & Moise,* for appellant,

*Messrs. McLeod & Shore,* for respondent,

February 3, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, instituted in the Court of Common Pleas for Sumter County, is a suit by Julius Sutton, as plaintiff, against the defendant, Continental Casualty Company, for recovery of damages for the alleged wrongful and fraudulent cancellation of a policy of insurance issued and de-

livered by defendant to the plaintiff. By way of answer to the allegations of the complaint, the defendant interposed a general denial, and, as a further defense, alleged that the plaintiff had accepted and receipted for a check "issued in full settlement, satisfaction and release of any and all claims under the policy in question and that the company had thereafter cancelled the policy in accordance with the provision contained in said policy." Issues being made, the case was tried at the March, 1932, term of said Court, before his Honor, Judge W. H. Townsend, and a jury. His Honor having overruled defendant's motion for a nonsuit and also the motion for direction of a verdict, a verdict was rendered for the plaintiff in the sum of $166.67 actual damages, and the further sum of $172.53 as punitive damages. A motion by the defendant for a new trial being refused, from judgment entered on the verdict, the defendant has appealed to this Court.

According to appellant's view, the exceptions imputing error to the trial Judge raise four issues, the first issue being stated by appellant as follows: "1. The testimony of insured as to conversations with insurer's agent at the time of taking out of the contract of insurance was inadmissable as tending to contradict or vary the terms of the written contract, and, under the facts of this case, such testimony was prejudicial."

In passing upon this issue, we deem it sufficient to call attention to the fact that the allegations of the complaint charge the defendant with fraud, and it was competent to offer testimony on this issue. The pertinent allegations of the complaint we quote herewith for the purpose of giving a clear understanding of the questions involved:

"3. That in consideration of the payment of Two and 10/100 ($2.10) Dollars, and in consideration of a like amount agreed to be paid monthly, the Defendant did, on the 8th day of November, 1917, issue and deliver to the Plaintiff its policy of insurance numbered 3440597, in and

by the terms of which the Defendant agreed to pay to the Plaintiff a maximum monthly benefit for sickness or accident of Forty. ($40.00) Dollars, and in case of death of the Plaintiff to pay to the beneficiary named in said policy the sum of Six Hundred ($600.00) Dollars.

"4. That after said policy was issued, the Plaintiff continued the payment of said monthly premiums until the Defendant wrote him on the 30th day of July, 1931, to the effect that his said policy had been cancelled.

"5. That several months ago, the Plaintiff suffered from a heart disorder, and arteriosclerosis, for which he made claim under the terms of the said policy, and in due time was paid an amount of money therefor by the Defendant, but within a very short time thereafter, while he was then and still suffering from the said heart trouble and arteriosclerosis, the Defendant undertook, as aforesaid, to cancel and lapse the said policy, well knowing that with his present physical infirmity, from which he is now suffering, that the Plaintiff could not obtain other insurance of this kind.

"6. That Plaintiff has complied with all of the requirements and conditions of the said policy, which was continued in force by the said Defendant until he became affected physically with the troubles aforesaid, from which he can never fully recover, nor reasonably expect, at his age, to continue working at his occupation of Boot and Shoe Cobbler but a comparatively short period of time.

"7. That while the said policy was in full force and effect, the Plaintiff became affected with heart trouble and arteriosclerosis, from which he is now suffering, so that he cannot work full time, and it is because of these serious and incurable troubles that the Defendant is now attempting to cancel the said policy and avoid further liability thereon, and thereby cheat and defraud the Plaintiff and the beneficiary named in said policy out of the benefits that they were and might be entitled to thereunder, the Defendant well knowing at the time that the Plaintiff was an ignorant negro man,

well advanced in years, and would probably not live much longer, and the beneficiary would then be entitled to realize on said policy.

"8. That Plaintiff is an ignorant negro man, unable to read and understand and properly construe the terms of written instruments, such as insurance contracts. That he was induced to take said policy by the servants and agents of said Defendant Company upon the representation that it would provide a sick benefit so long as he lived and kept it in force.

"9. That all of said acts were done by the Defendant wrongfully, wilfully and wantonly, and for the purpose of repudiating and cancelling said policy, and thereby defraud the Plaintiff, and the beneficiary named therein, out of all the vested property rights and benefits under said policy, and as a result thereof the plaintiff alleges that he has sustained damages, both actual and punitive, in the sum of Two Thousand, Nine Hundred Ninety-nine and 99/100 ($2,-999.99) Dollars."

Under these allegations it was proper for plaintiff to offer testimony as to the conversations defendant's agent had with the plaintiff at the time of taking out the contract of insurance in question. In this connection, we may add, there was testimony tending to establish the several allegations.

The second issue appellant states in the following language: "2. That the policy contract, by its specific terms, gave insurer the right to cancel same, which cancellation was effected as therein provided; consequently, there was no fraudulent breach of the contract nor any fraudulent invasion of insured's rights."

A clear inference to be drawn from the testimony is that the plaintiff was induced to take out the policy in question upon the representations that it would remain in full force and effect so long as he paid the monthly premium thereon which was $2.10 per month, payable on the first day of each month, and plaintiff made said payments promptly and kept

up the same from November 8, 1917, until the defendant wrote him on the 30th day of July, 1931, notifying him that the policy had been canceled. The plaintiff did not, on August 1, 1931, pay the monthly premium for the reason that having received from the defendant notice that the policy had been cancelled considered it useless to pay out any more money on it, but the premiums were paid up to August 1, 1931. It further appears from the testimony that the plaintiff became ill on or about May 11, 1931, and filed with the defendant a claim against the defendant, under the provisions of the policy, in the sum of $73.33, which claim the defendant paid by check on or about the 22d day of July, 1931, which the plaintiff was clearly entitled to under the sick benefit provision of the policy. It further appears that the defendant, through its agents, had inserted on the back of this check, just above the place for plaintiff's indorsement, the following statement: "Received of the Continental Casualty Company $73.33 in full payment, satisfaction and release of any and all claims that I myself, my heirs, executors, administrators, assigns or beneficiaries now have or may hereafter have against said Company, under policy numbered 3440597 for or on account of injuries or illness sustained by me on or about 5-11-31 and any loss that may hereafter result from said injuries or illness."

Plaintiff was ill and in bed at the time this check was handed him for the purpose of indorsing his name thereon and took no notice of the wording above the signature, and, it seems, knew nothing of it until the trial of the case, though the writing was evidently there at the time the plaintiff indorsed his name thereon. However, there was certainly no consideration for the release covered by this wording on the back of the check, and procuring plaintiff's signature to the same under the circumstances, was, in our opinion, some evidence of fraud practiced upon the plaintiff. At least, whether such was the purpose and intent of the defendant's agents was a question for the jury.

Furthermore, the notice sent by defendant to the plaintiff, regarding the cancellation of the policy, following on the "heels" of procuring plaintiff's said indorsement described above, caused plaintiff to believe that his policy was at an end, and he, therefore, as stated above, not wishing to pay out money uselessly, did not pay the premium for August 1, 1931, and the policy really lapsed for nonpayment of 'the premium. All of these matters and other circumstances to which we have referred were matters for the jury in determining whether or not the alleged fraud was practiced upon the plaintiff by the defendant and whether or not the plaintiff was entitled to recover damages for such acts. In this connection we call attention to the fact that, if the defendant, under the provisions of the policy, desired to cancel the same, it was incumbent upon the defendant to return to the plaintiff the unearned portion of the premiums which had been paid in at the time the defendant gave such notice of cancellation, and having failed to do this there was a breach of the contract to carry the insurance "as long as the premium should be paid unless sooner terminated in accordance with its terms." Under all the circumstances we think his Honor properly submitted the issue of fraud to the jury growing out of the cancellation of 'the policy in question.

Counsel for appellant calls the Court's attention to the decision of this Court in the case of *Herndon v. Continental Casualty Company*, 144 S. C., 448, 142 S. E., 648. The facts in that case, as we view the same, were not similar to the facts in the case at bar. In the case at bar the plaintiff did not pay the premium due August 1, 1931, because of receiving the notice of cancellation dated July 30, 1931, and from that time the only avenue left open for the plaintiff was a suit for damages, actual and punitive, which the plaintiff suffered at the hands of the defendant and its agents, by reason of the facts we have already stated herein. The release appearing on the back of the check sent

the plaintiff, in payment of sick benefit claim, and which the plaintiff signed, thinking that he was merely indorsing the check for the purpose of getting pay for the sick benefit claim, could in no sense bind the plaintiff, for there was no consideration for such release, but it was a circumstance from which a jury might draw an inference of fraud intended to be practiced upon the plaintiff by the defendant and its agents and causing the plaintiff not to pay the monthly premium on the said policy. In our opinion, when the defendant did this, the plaintiff had the right to institute the action and ask for damages for the violation of his rights reserved in the policy. It clearly appears from the testimony that the defendant desired to cancel the policy for the purpose of avoiding any further sick benefit claim, even though the plaintiff had carried the policy from the year 1917 until August 1, 1931, and had kept up the monthly payments thereon from month to month.

Appellant states the third question in the appeal as follows:

"3. That the beneficiary, under the terms of the policy contract, had no vested interest therein and consequently there could be no fraudulent invasion of the beneficiary's rights."

The beneficiary named in the policy is not a party to this action and no question regarding the beneficiary is properly before this Court.

Appellant's fourth issue is as follows:

"4. That the insured received certain benefits under the policy contract, and executed a release therefor, and as insured did not return, or offer to return such benefits, he could not maintain this action."

As stated above, the proof in the case clearly shows there was no consideration for the release alleged by the defendant to have been procured from the plaintiff, and, in our opinion, the contention by the appellant, that the plaintiff should have made return to the defendant before instituting

this action, is without merit. The plaintiff did not owe the defendant anything and does not at this time, so far as the record in the case discloses. The money paid to the plaintiff by the defendant was due the plaintiff under the sick benefit provision of the policy.

The exceptions will have to be overruled and it is, therefore, the judgment of this Court that the judgment of the Circuit Court be and the same is hereby affirmed.

NOTE: The charge of the trial Judge, which so clearly stated the issues in the cause and the law applicable thereto, will be reported.

MR. CHIEF JUSTICE BLEASE, and MR. M. M. MANN, Circuit Judge, concur.

MR. JUSTICE BONHAM (dissenting) : I am unable to concur in the leading opinion in this case. Although the respondent is a negro, he can read and write and his wife can read and write. He had this policy for thirteen years. He is charged by law with knowledge of the provision of the policy to the effect that the company could terminate it upon giving him notice. To hold otherwise is to go directly in the teeth of the principle laid down in the cases of *Prince v. State Mut. Life Insurance Company,* 77 S. C., 187, 57 S. E., 766; *J. B. Colt Company v. Britt,* 129 S. C., 226, 123 S. E., 845; *Lawrence v. Durham Life Insurance Company,* 166 S. C., 203, 164 S. E., 632, 633. In the last named case this Court said: "It also appears that, by the terms of the policy referred to in the first cause of action and introduced by the plaintiff, the defendant had the right, after the total disability occurred, to treat the policy as though the insured had died and to pay the face value of the same. The defendant has elected to adopt this provision of the contract, *and can hardly be charged with fraud for enforcing a perfectly legal contractual right."* (Italics added.)

Concede, if you so desire, that it was not error to admit the testimony of plaintiff relative to the statements made to

him by the agent of the defendant which influenced him to apply and accept the policy of insurance, and concede, if you so desire, that the agent said to plaintiff everything which he is alleged to have said, there remains an utter lack of any evidence to show fraud on the part of the defendant or its agent. The language of the agent from which it is sought to impute fraud to the company is nothing more than the "selling talk" employed by salesmen usually.

But it is alleged that the defendant did not return, nor offer to return, the unearned portion of the premiums paid by the plaintiff. There is no proof that there remained of the premiums paid, any unearned part. On the contrary there is proof that plaintiff had been paid two sick benefits by the company. He had been all the time protected by the accident insurance which provided that if, during the currency of the policy, he had suffered nonfatal injury he would have been paid; if he had suffered fatal injuries the beneficiary under his policy would have been paid.

It is a frequent utterance of the Courts that they do not make contracts for persons; they construe and enforce those which the parties thereto have made. If one has made a hard bargain he must stand by it, unless he can show that he has been overreached, deceived, or defrauded. There is no such proof here on behalf of the plaintiff.

I think the judgment below should be reversed.