494 S.E.2d 449

**Cynthia L. LISTER and Toney J. Lister, Respondents,**

v.

**NATIONSBANK of Delaware, N.A. and Avis Rent A Car Systems, Inc., Defendants,**

**Of which Avis Rent A Car Systems, Inc. is Appellant.**

No. 2754.

Court of Appeals of South Carolina.

Heard Nov. 5, 1997.
Decided Nov. 17, 1997.
Rehearing Denied Jan. 22, 1998.

David L. Moore, Jr., of Love, Thornton, Arnold, & Thomason, Greenville, for appellant.

Roger L. Couch and John Hawkins, both of Lister, Couch Courtney, Spartanburg, for respondents.

ANDERSON, Judge:

This case involves unauthorized charges on the credit card of Toney and Cynthia Lister (Listers) by an Avis Rent A Car Systems (Avis) licensee, ASHA, N.V., which is located on Aruba. The Listers filed a complaint against NationsBank of Delaware, N.A., and Avis for various causes of action, including constructive fraud and breach of contract accompanied by a fraudulent act. Avis failed to answer the complaint and the Listers filed an Affidavit of Default. The Honorable Donald W. Beatty denied Avis' motion to be relieved from the entry of default entered against it. In addition, he granted the Listers' motion to amend the complaint to name "Avis Rent A Car Systems" as the defendant in the place of "Avis Rent A Car."[1] At the damages hearing, Avis was represented by counsel but was not allowed to present any evidence. In an order, the Honorable Gary E. Clary held South Carolina law, rather than the law of Aruba, applied and awarded the Listers $8,605.08 in actual damages and $200,000 in punitive damages. Thereafter, he denied Avis' motion for reconsideration. Avis appeals.[2] We affirm.

---

1. Avis has not appealed the order issued by Judge Donald W. Beatty.

2. NationsBank filed an answer and is not a party to this appeal.

138

## FACTS/PROCEDURAL BACKGROUND

In December of 1994, the Listers, their son, and Toney Lister's parents went on a cruise. When the ship docked for the day in Aruba, the Lister party rented a Mitsubishi sports utility vehicle from the local Avis agency. The Listers used their NationsBank Visa Gold Card to pay for the rental of the vehicle. The rental fee was eighty U.S. dollars. To indicate he wanted to purchase car insurance, Toney Lister initialed the rental contract next to a nine dollar fee. The credit card account was left open in order to include payment for gasoline when the car was returned.

After lunch, the Listers noticed the right rear tire was flat and took the car to a service station for repair. Shortly after leaving the service station, the Listers' son lost control of the vehicle and it flipped. According to the Listers, the accident was caused by the tire deflating again.

After the accident, Toney Lister returned to the Avis dealership. Willem Dunlock, the manager of the Avis dealership, would not let Lister close out his account unless he signed a Visa International Cardholder Assignment Form to pay for damages to the rental car. Because Dunlock told him insurance was available through the Gold Card, Lister modified the form to read:

> I *Lister, Toney Joe,* hereby permit my Visa Card [number] to be charged for damages which occurred on or about *29/12/94,* with regard to [contract number] **should insurance be in effect thru said Visa card without reimbursement from cardholder.** In signing this Cardholder Assignment Form, I submit that I am in agreement with these charges in the amount of $ *unknown.* (Modified language in bold).

Lister signed this modified assignment form because he believed the form was necessary for the Visa Gold Card insurance company to pay and he would not be personally responsible. Dunlock refused to close out the account with the modified form. At Dunlock's request, Cynthia Lister, Toney's wife, signed the charge statement to authorize the insurance. The Listers then returned to the ship for the voyage home.

On January 3, 1995, Dunlock faxed Lister a copy of the Visa credit slip, which indicated a charge of $80.00. The $9 fee for insurance was not included in that amount. Lister believed the credit card account had been closed out.

A few months later when the Listers were shopping in South Carolina, the Visa Gold Card was declined because they had exceeded the credit limit. Cynthia Lister called the credit card company and discovered $7,696.63 had been charged on April 20, 1995, by ASHA, N.V., for the wrecked vehicle. The Listers never authorized this charge on their credit card account. The Listers' attorney faxed Dunlock a letter demanding this charge be withdrawn immediately. In response, Dunlock wrote: "You should contact Visa, being a client of theirs, and demand they reimburse you for this amount. Be[ing] a lawyer in the U.S.A. you should not have any problem convincing Visa to repay you."

At the damages hearing, Avis argued Aruban law should apply. It submitted the affidavit of Roy Brown, an attorney in Aruba, who stated punitive damages are not recognized and, consequently, not awarded in Aruba.[3] This document was notarized by Maria Albertina Eman and stamped with Eman's official seal. The trial court disregarded this affidavit, finding the affidavit was not admissible under Rule 902(3), SCRE, and was suspect because the court had no contempt powers over Brown or the notary.

### ISSUES

I. Did the trial court err in refusing to consider the affidavit of Roy Brown regarding Aruban law on punitive damages?

II. Did the trial court err in applying South Carolina law in lieu of Aruban law when determining which law would control the imposition of punitive damages?

III. Did the trial court violate Avis' due process interests by failing to reduce the punitive damages award?

---

**3.** Willem Dunlock had recommended the Listers hire Brown to obtain the police report of the accident.

### *LAW/ANALYSIS*
### I. ROY BROWN AFFIDAVIT

 Avis argues the trial court erred in refusing to consider the affidavit of Roy Brown concerning Aruba's law on punitive damages. We agree.

The trial court found the affidavit was not admissible under Rule 902(3), SCRE. Rule 902 requires a document must be authenticated by extrinsic evidence as a condition of the document's admissibility unless certain exceptions apply. Rule 902(3) provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> . . .
>
> (3) Foreign public documents. A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. . . .

The court held the affidavit was not admissible under the foreign public documents exception because the document was executed by a private attorney instead of by a government official. Avis contends the affidavit is not a foreign official record and Rule 902(3) is not relevant to its admission.

The trial court is correct the affidavit is not admissible as a foreign official document under Rule 902(3). However, the affidavit is admissible under Rule 902(8), which provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> . . .
>
> (8) Acknowledged documents. Documents accompanied by a certificate of acknowledgment executed in the man-

ner provided by law by a notary public or other officer authorized by law to take acknowledgments.

Pursuant to the Uniform Recognition of Acknowledgments Act, notarial acts performed outside of South Carolina by a person authorized to perform notarial acts by the laws or regulations of a foreign country for use in this state have the same effect as if performed by a notary public of this state, as long as the official seal of the person performing the notarial act is affixed to the document. S.C.Code Ann. §§ 26–3–10 to –30 (Rev.1991). As a result, the Brown affidavit, which bore the Aruban notary seal of Eman, was admissible.

█ Moreover, pursuant to Rule 44(d), SCRCP, "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the law of evidence. The court's determination shall be treated as a ruling on a question of law." This rule is imbued with liberality and elasticity. The trial court is permitted to consider relevant materials even if they are not admissible. Furthermore, as the South Carolina Supreme Court explained in *Rauton v. Pullman Co.*, 183 S.C. 495, 504, 191 S.E. 416, 420 (1937): "The interpretation given of the law of a foreign country, state, or territory by its tribunals is an integral and essential part of the law itself, and should be stated by the witness."

Thus, the trial court erred in disregarding Brown's affidavit concerning Aruban law on punitive damages. However, this error is harmless if South Carolina law applies.

## II. BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

█ Before determining choice of law, this Court must first decide if the cause of action for breach of contract accompanied by a fraudulent act is an action in contract or in tort. In *Peeples v. Orkin Exterminating Co.*, 244 S.C. 173, 135 S.E.2d 845 (1964), the theory of breach of contract accompanied by a fraudulent act is identified as an action in contract:

An action for breach of contract accompanied by a fraudulent act is an action *ex contractu*, not *ex delicto*, *Cain v. United Insurance Company of America*, 232 S.C. 397, 102 S.E.2d 360; *Ross v. American Income Life Insurance*

*Company,* 232 S.C. 433, 102 S.E.2d 743; however, it partakes of elements of both contract and tort.

*Peeples,* 244 S.C. at 178, 135 S.E.2d at 847. South Carolina has long recognized a plaintiff's right to recover punitive damages for breach of contract accompanied by a fraudulent act. *Floyd v. Country Squire Mobile Homes, Inc.,* 287 S.C. 51, 336 S.E.2d 502 (Ct.App.1985). However, mere breach of a contract, even if willful or with fraudulent purpose, is not sufficient to entitle a plaintiff to go to the jury on the issue of punitive damages. *Id. See also Vann v. Nationwide Ins. Co.,* 257 S.C. 217, 220, 185 S.E.2d 363, 364 (1971) (" 'Even in the wilful and fraudulent breach of a contract only actual damages may be recovered, unless the fraudulent breach is accompanied by a fraudulent act.' "). It is the accompanying fraudulent act that allows recovery for punitive damages.

In *Floyd, supra,* this Court explained:

To recover punitive damages for breach of contract accompanied by a fraudulent act, the plaintiff must prove three elements:

(1) A breach of contract. *Bailey v. North Carolina Mutual Life Ins. Co.,* 173 S.C. 131, 175 S.E. 73 (1934). In the absence of a breach of contract, the plaintiff's proper cause of action will generally be for fraud in the inducement. *See Smyth v. Fleischmann,* 214 S.C. 263, 52 S.E.2d 199 (1949).

(2) Fraudulent intent relating to the breaching of the contract and not merely to its making. *Thompson v. Home Security Life Ins. Co.,* 271 S.C. 54, 244 S.E.2d 533 (1978); *Branham v. Wilson Motor Co.,* 188 S.C. 1, 198 S.E. 417 (1938). Fraudulent intent is normally proved by circumstances surrounding the breach. *See Sutton v. Continental Casualty Co.,* 168 S.C. 372, 167 S.E. 647 (1933).

(3) A fraudulent act accompanying the breach. *Vann v. Nationwide Ins. Co., supra; Hardee v. Penn Mutual Life Ins. Co.,* 215 S.C. 1, 53 S.E.2d 861 (1949). The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with

the breach itself and cannot be too remote in either time or character.

*Floyd,* 287 S.C. at 53–54, 336 S.E.2d at 503–04.

Elementally, the tort prong of breach of contract accompanied by a fraudulent act is *"accompanied by a fraudulent act."* Absent a "fraudulent act accompanying the breach," there can be no recovery for punitive damages. Because the element that gives rise to punitive damages, which is the issue in question, is the tortious element of breach of contract accompanied by a fraudulent act, we will first analyze this case under the choice of law test for torts.

## A. Tort Standard

Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the state in which the injury occurred. *Bannister v. Hertz Corp.,* 316 S.C. 513, 450 S.E.2d 629 (Ct.App.1994). *See also Dawkins v. State,* 306 S.C. 391, 412 S.E.2d 407 (1991) (it is well established in South Carolina that in tort cases law of place where injury was occasioned or inflicted, governs in respect of right of action, and law of forum in respect to matters pertaining to remedy only); *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E.2d 303 (1964) (generally, where action is brought in one jurisdiction for tort committed in another, all matters relating to right of action are governed by law of place of tort); *Rauton v. Pullman Co.,* 183 S.C. 495, 501, 191 S.E. 416, 419 (1937) (the well-established rule is "the law of the place where the injury was occasioned or inflicted, governs in respect of the right of action, and the law of the forum in respect to matters pertaining to the remedy only.").

In the case of fraudulent misrepresentation, the law of the place of the wrong (*lex loci delicti* ) controls. *Hester v. New Amsterdam Casualty Co.,* 287 F.Supp. 957 (D.S.C.1968).[4] The place of the wrong is not where the misrepresentations were made but where the plaintiff, as a result of the misrepresentation, suffered a loss. *Id.* Avis admits "[t]he accompanying fraudulent act in this case involves the representation by

---

4. The Fourth Circuit Court of Appeals affirmed the District Court on the issue of conflict of laws, but remanded as to the issue of damages. *See Hester v. New Amsterdam Casualty Co.,* 412 F.2d 505 (4th Cir.1969).

the employees of ASHA, NV that they were authorized to charge the Plaintiffs' credit card with the value of the rental car involved in the accident of December 29, 1994." Since the Listers suffered their financial loss as a result of this misrepresentation in South Carolina, we conclude South Carolina law applies under the choice of law test for torts.

### B. Contract Standard

Breach of contract accompanied by a fraudulent act is an action *ex contractu;* concomitantly, we analyze this action under the choice of law rules for contracts. In *Livingston v. Atlantic Coast Line R.R.*, 176 S.C. 385, 180 S.E. 343 (1935), our Supreme Court discussed the traditional choice of law provision for contracts:

It is fundamental that unless there be something intrinsic in, or extrinsic of, the contract that another place of enforcement was intended, the *lex loci contractu* governs. If the contract be silent thereabout, the presumption is that the law governing the enforcement is the law of the place where the contract is made.

"The act of the parties in entering into a contract at a particular place, in the absence of anything shown to the contrary, sufficiently indicates their intention to contract with reference to the laws of that place; hence the rule as it is usually stated is that a contract as to its validity and interpretation is governed by the law of the place where it is made, the *lex loci contractus;* or more accurately, that contracts are to be governed as to their nature, validity and interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view."

*Livingston,* 176 S.C. at 391, 180 S.E. at 345. *See also Witt v. American Trucking Associations, Inc.,* 860 F.Supp. 295 (D.S.C.1994) (in contract actions, South Carolina courts apply substantive law of place where contract at issue was formed and this rule applies where contract's formation, interpretation, or validity is at issue; however, where performance is at issue, law of place of performance governs).

This case concerns the performance of a contract between the Listers and Avis, which contract Avis breached. There is

no question the initial contract between the Listers and Avis for the rental of the car was executed and performed in Aruba. However, the contract forming the basis for this action is the modified Visa International Cardholder Assignment Form. Toney Lister allowed Avis to charge the Gold Card for the damage to the car for collection of the Gold Card insurance only.

Immediately after executing this contract, the Listers boarded the ship and returned to their home in Spartanburg. They left Aruba with the understanding they would not be personally responsible for payment of the damages to the car. This agreement was confirmed by a letter Toney Lister received in Spartanburg from Willem Dunlock informing him the Listers' Visa Gold Card had only been charged $80.00. The Listers continued to correspond from Spartanburg with Dunlock in Aruba. In April of 1995, the Listers received, at their home in Spartanburg, the bill which included the charge for the damages to the car.

Although the breach of contract was initiated in Aruba, it was completed through the financial relationship between the Listers and NationsBank in South Carolina. The Listers applied for the credit card in South Carolina and received bills for their credit card in South Carolina. The Listers were notified in South Carolina of the unauthorized charge by ASHA, N.V., on the Visa Gold Card. The breach of contract, the taking of the money from the Visa account, occurred in South Carolina. South Carolina was the place where the money was wrongfully appropriated. South Carolina was the place of the breach of contract and the place of performance. We hold that South Carolina law applies pursuant to the contract theory for choice of law.

### C. Restatement's Modern Choice of Law Test: "Most Significant Relationship"

South Carolina has not adopted the modern choice of law test found in the Restatement. However, we hold that if the Restatement test were applied in the case *sub judice*, South Carolina is the place with the "most significant relationship" to the cause of action for breach of contract accompanied by a fraudulent act.

"The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971). Further, section 188(1) provides: "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 188(1) (1971).

According to the Restatement, a court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. Restatement (Second) of Conflict of Laws § 6 (1971). However, when there is no such directive, the Restatement has established certain factors relevant to the choice of the applicable rule of law. To determine the place with the "most significant relationship," the court must evaluate the following general principles:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6.

For tort cases, the court, in applying the principles of section 6 to determine the law applicable to an issue, must take into account the following contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2).

In contract cases, in the absence of an effective choice of law by the parties, the contacts to consider in applying the principles of section 6 to determine the applicable law include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Id.* § 188(2). The tort and contract contacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.* §§ 145(2), 188(2).

In applying the contacts under the tort standard, we find the injury occurred in South Carolina with the imposition of the charge for the car on the Listers' Visa Gold Card. However, the conduct causing this injury occurred in Aruba. The relationship between Avis and the Listers regarding the breach of contract and fraudulent act is centered in South Carolina. The financial relationship between NationsBank and the Listers made both the contract and its breach possible. Furthermore, the Listers experienced the consequences of the breach in South Carolina. The Listers are residents of South Carolina, while Avis is a corporation licensed to do business in South Carolina and Aruba, among other places.

Applying the contacts under the standard for contract cases, this Court concludes that although Aruba may have been the place of contracting and negotiation for this contract, the performance took place primarily in South Carolina, where the breach occurred through the financial relationship between the Listers and NationsBank, which issued the Visa Gold Card. The subject matter of the contract, the Listers' Gold Card account, is a South Carolina contact. The acts and conduct involving South Carolina and the Listers include:

(a) the Listers applied for their card in South Carolina;

(b) the Listers received their card in South Carolina;

 (c) the Listers received their bills for the Gold Card account in South Carolina; and

 (d) the Listers paid their bills on the Gold Card account in South Carolina.

Assumptively concluding that South Carolina would apply the "most significant relationship" test under the Restatement, we find South Carolina is the place with the "most significant relationship" to the Listers' cause of action.

### III. CHOICE OF LAW

■ Avis asserts the trial court erred in applying South Carolina law instead of Aruban law when determining which law would control the imposition of punitive damages. Avis further contends the trial court erred in its application of the "most significant relationship" test in this determination.

In its order, the trial court cited *In re Merritt Dredging Co.*, 839 F.2d 203 (4th Cir.1988), in examining whether South Carolina applies the "most significant relationship" test or the "appropriate relation" test in determining choice of law issues. The court analyzed the issue under both tests and concluded that under either test South Carolina law should be applied.

■ The *Merritt* court was interpreting S.C.Code Ann. § 36–1–105 (1976), the choice of law provision of the Uniform Commercial Code, when it adopted the "most significant relationship" test. The federal court noted although South Carolina's general contract choice of law rule calls for the application of the law of the place of contracting, the legislature intended the rule in cases governed by the UCC to differ from the traditional rule. Here, neither the underlying lease of the car nor the Visa International Cardholder Assignment Form are contracts governed by the UCC. *See D. & D. Leasing Co. of South Carolina v. Gentry*, 298 S.C. 342, 380 S.E.2d 823 (1989) (Article 2 of the UCC applies to transactions in goods and does not encompass leases in general). Therefore, *Merritt* is not applicable to this case.

In *Sangamo Weston, Inc. v. National Sur. Corp.*, 307 S.C. 143, 414 S.E.2d 127 (1992), the United States District Court certified a question to our Supreme Court concerning the applicability of South Carolina law to the validity and con-

struction of insurance contracts covering a manufacturing facility in South Carolina. Because the record was so inadequate, the Court declined to address the question of whether South Carolina would adopt the more modern view of choice of law stated in the Restatement (Second) of Conflict of Laws § 193 (1971), which provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

We find traditional common law choice of law rules are still controlling in South Carolina. Because South Carolina law applies, the trial judge's error in disregarding Brown's affidavit was harmless.

## IV. PUNITIVE DAMAGES AWARD

 Finally, Avis maintains the trial court violated Avis' due process interests by failing to reduce the punitive damages award. We disagree.

 In order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the plaintiff's rights. S.C.Code Ann. § 15–33–135 (Supp.1996); *Taylor v. Medenica,* 324 S.C. 200, 479 S.E.2d 35 (1996). The amount of damages, actual or punitive, remains largely within the discretion of the finder of fact, as reviewed by the trial judge. *Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991). The trial judge is vested with considerable discretion over the amount of a punitive damages award, and this Court's review is limited to correction of errors of law. *South Carolina Farm Bureau Mut. Ins. Co. v. Love Chevrolet, Inc.,* 324 S.C. 149, 478 S.E.2d 57 (1996).

 The Due Process Clause of the Fourteenth Amendment prohibits states from imposing grossly excessive punishments on tortfeasors. *BMW of North America, Inc. v. Gore,*

517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Supreme Court determined whether the Due Process Clause rendered a punitive damages award unconstitutional. The Court noted "unlimited jury discretion—or unlimited judicial discretion for that matter—in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities." *Id.* at 18, 111 S.Ct. at 1043. In *Haslip*, the Court upheld the punitive damages award, finding Alabama's post-trial procedures for scrutinizing such awards and its appellate review "makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Id.* at 21, 111 S.Ct. at 1045.

In response to *Haslip*, the South Carolina Supreme Court, in *Gamble, supra,* developed an eight factor post-verdict review which trial courts are required to conduct to determine if a punitive damages award comports with due process. The *Gamble* factors include:

(1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally, (8) as noted in *Haslip*, "other factors" deemed appropriate.

*Gamble*, 305 S.C. at 111–12, 406 S.E.2d at 354. Under *Gamble*, the trial court is not required to make findings of fact for each factor to uphold a punitive damages award. *McGee v. Bruce Hosp. Sys.*, 321 S.C. 340, 468 S.E.2d 633 (1996). However, in this case, the trial court made findings on each factor. We agree with the trial court's determination the punitive damages award was proper.

By defaulting, Avis admitted all allegations in the Listers' complaint, including the averment that Willem Dunlock was acting as Avis' agent in making the unauthorized charge. In addition, Avis was directly aware of the unauthorized charge through correspondence with the Listers. Avis was highly culpable through the acts of its agent. Although there is no

evidence in the record of similar past conduct, the punitive damages award should strongly deter future similar conduct by Avis and others. The award is reasonably related to the harm likely to result from this conduct if Avis were not deterred from making unauthorized credit card charges. Avis has a net worth of $500,000,000 and can easily pay the $200,000 punitive damages award. Avis enjoys the economic benefits when American citizens choose to use Avis in foreign countries because of the trust generated in the United States. Public policy favors protecting South Carolina citizens from a breach of that trust. The need for protection and deterrence is heightened by the enormous difficulties the Listers experienced in dealing with the local Avis agent.

Although we find the damages award proper under *Gamble, supra,* we must analyze the award in light of the United States Supreme Court's decision in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The Court provided the following guideposts for determining the reasonableness of punitive damages awards: (1) the degree of reprehensibility; (2) the ratio of the punitive damages award to the actual harm inflicted on the plaintiff; and (3) the comparison of the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct. *Id.*

The Supreme Court explained: "[I]nfliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty." *Id.* at 576, 116 S.Ct. at 1599, 134 L.Ed.2d at 827 (citation omitted). The actions of Avis' agents in intentionally imposing an unauthorized charge of nearly $8000 on the Listers' Visa Gold Card were highly reprehensible. Thus, the imposition of punitive damages was not " 'grossly out of proportion to the severity of the offense.' " *Id.* at 576, 116 S.Ct. at 1599, 134 L.Ed.2d at 827.

In determining whether the ratio was unreasonable, the Court held: " 'We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of

reasonableness ... properly enter[s] into the constitutional calculus.'" *Id.* at 582, 116 S.Ct. at 1602, 134 L.Ed.2d at 831. In *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Court rejected Pacific Mutual's due process challenge and noted that a punitive damages award of more than four times the amount of compensatory damages and 200 times the out-of-pocket expenses of the plaintiff was not constitutionally improper. However, according to *BMW,* "[w]hen the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'" *BMW,* 517 U.S. at 583, 116 S.Ct. at 1603, 134 L.Ed.2d at 831. In the present case, the trial court awarded the Listers $8,605.08 in actual damages and $200,000 in punitive damages. The punitive damages award is approximately 23.24 times the actual damages award. We find this ratio to be within the constitutionally accepted range.

In comparing the punitive damages award to the civil or criminal penalties that are imposed for comparable misconduct, a reviewing court should "'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *Id.* (quoting *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 301, 109 S.Ct. 2909, 2934, 106 L.Ed.2d 219 (1989)). In upholding a punitive damages award in *Haslip, supra,* the Supreme Court noted that although the exemplary damages award was "much in excess of the fine that could be imposed," imprisonment could also be required of an individual in the criminal context. *Haslip,* 499 U.S. at 23, 111 S.Ct. at 1046. A person who is convicted for financial transaction card fraud and who fraudulently obtained more than five hundred dollars in value in a six-month period faces the maximum penalty of a five thousand dollar fine and five years imprisonment. S.C.Code Ann. § 16–14–60 (Supp.1996). We find although the punitive damages award greatly exceeds the maximum monetary fine for comparable misconduct, the term of imprisonment balances the comparison of the punitive damages award and the statutory penalties.

Under the South Carolina Supreme Court's *Gamble* test and the United States Supreme Court's *BMW* "guideposts," we hold the punitive damages award of $200,000 was not unreasonable or grossly excessive so as to violate Avis' due

process interests. Therefore, the trial court did not err in refusing to reduce the punitive damages award.

In its reply brief, Avis avers for the first time that due process would require no punitive damages be awarded because the event occurred in Aruba. However, an appellant may not use the reply brief to argue issues not argued in the appellant's initial brief. Rule 207(b)(1)(B), SCACR; Rule 210(b), SCACR; *Sloan Constr. Co. v. South Carolina Bd. of Health and Envtl. Control*, 285 S.C. 523, 331 S.E.2d 345 (1985); *State v. Wakefield*, 323 S.C. 189, 473 S.E.2d 831 (Ct.App.1996). *See also* 4 C.J.S. *Appeal and Error* § 619 (1993) ("A point raised for the first time in the reply brief will not be considered by the appellate court."). Consequently, we need not address this issue.

### *CONCLUSION*

We hold the substantive law of South Carolina controls the imposition of punitive damages in the instant case. We reject the contention that the law of Aruba should be applied in regard to the issue of punitive damages. Under traditional South Carolina choice of law principles and the Restatement's modern choice of law test, this Court comes to the ineluctable conclusion that the issue of punitive damages must be decided under South Carolina substantive law. Thus, the trial court did not err in imposing punitive damages on Avis.

Additionally, under *Gamble, Haslip,* and *BMW,* Avis' due process rights were not violated. The amount of punitive damages was reasonable and constitutionally acceptable.

Finally, although the trial court erred in disregarding the affidavit of Brown, this error was harmless because the substantive law of South Carolina, rather than Aruba, applies in a choice of law review. Accordingly, the decision of the trial court is

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.