777 S.E.2d 402

Gretchen A. **ROGERS**, as Guardian ad Litem
for Mark A. Malloy, Appellant,

v.

Kenneth E. **LEE** and Law Offices of
Lee & Smith, P.A., Respondents.

Appellate Case No. 2013–002699.
No. 5348.

Court of Appeals of South Carolina.

Heard May 7, 2015.
Decided Sept. 2, 2015.
Rehearing Denied Oct. 23, 2015.

Thomas A. Pendarvis and Catherine Brown Kerney, both of Pendarvis Law Offices, PC, of Beaufort, and Brent Paul Stewart, of Stewart Law Offices, LLC, of Rock Hill, for appellant.

David W. Overstreet and Michael Baxter McCall, both of Carlock Copeland & Stair, LLP, of Charleston, for respondents.

HUFF, J.

Gretchen A. Rogers, as guardian ad litem (GAL) for Mark A. Malloy, brought this legal malpractice action against Kenneth E. Lee (Attorney Lee) and Law Offices of Lee & Smith, P.A. (the Law Office) (Attorney Lee and the Law Office hereinafter collectively referred to as LEE), based upon LEE's representation of Malloy in a North Carolina workers' compensation claim. Rogers appeals from an order of the trial court granting summary judgment in favor of LEE on the basis that North Carolina's substantive law applies such that the state's statute of repose bars the legal malpractice claim. We affirm.

## FACTUAL/PROCEDURAL HISTORY

Attorney Lee, who is licensed to practice law in North Carolina, represented Malloy in a North Carolina workers' compensation claim after Malloy sustained injuries in 2002 when he fell from a ladder while working in North Carolina for a North Carolina employer. On April 16, 2003, Malloy entered into a contract of representation, retaining the Law Office to represent him in the matter and pursue the North Carolina workers' compensation claim. Among other things, this agreement provided representation of Malloy would end "when the case is either settled or decided at a hearing." Additionally, it stated as follows: "This agreement shall be governed by the law of the State of North Carolina and the Rules and Regulations of the North Carolina Industrial Commission." On November 25, 2003, Malloy entered into a settlement agreement with the employer and carrier to accept payment of $100,000 in full satisfaction of any current and future claims he may have as a result of the accident. Both Attorney Lee and Malloy were present at mediation in North Carolina when the settlement was reached and, along with Malloy's wife, executed the agreement at that time. By letter dated February 25, 2004, the Law Office disbursed Malloy's settlement funds from its South Carolina office to Malloy's South Carolina home. The Law Office's last correspondence with Malloy occurred on January 10, 2005, when Malloy was provided with a copy of a form in regard to his workers' compensation claim.

Rogers, as GAL for Malloy, filed this action in Spartanburg County's Court of Common Pleas on December 6, 2012, asserting claims for professional negligence, breach of fiduciary duty, and breach of contract. Thereafter, LEE filed a motion for summary judgment on the ground Malloy's claims were barred by North Carolina's four-year statute of repose, asserting the claims were governed by North Carolina substantive law and more than four years had elapsed since the last alleged act or omission giving rise to the causes of action.[1] Rogers opposed the motion for summary judgment, arguing South Carolina follows the traditional choice of law principle whereby the substantive law applied in a tort action is governed by the *lex loci delicti*, which is the law of the state in which the injury occurred. She asserted Malloy's financial injury stemming from LEE's professional negligence and breach of fiduciary duty occurred in South Carolina, where he resided. She additionally maintained South Carolina, which has not adopted a statute of repose for professional negligence or breach of fiduciary claims against lawyers, has an interest in compensating victims for injuries resulting from such negligence and breach of duty, and in particular when the resulting injury occurs in South Carolina.

The trial court filed a Form 4 order on September 5, 2013, granting summary judgment to LEE. In this order, the trial court noted the contract between the parties contained a choice of law clause providing North Carolina substantive law would govern the contract, that Rogers alleged LEE negligently settled the North Carolina workers' compensation action, and North Carolina's statute of repose would bar the present action. The court held the case of *Nash v. Tindall Corp.*, 375 S.C. 36, 650 S.E.2d 81 (Ct.App.2007) controlled the matter and, noting the underlying workers' compensation action was filed, mediated, settled and approved in North

---

1. This North Carolina statute of repose provides as follows:

 Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: .... Provided ... that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action....

 N.C. Gen.Stat. § 1–15(c) (2013).

Carolina, concluded the *lex loci delicti* of the action arose in North Carolina.

The trial court thereafter filed a formal order, again finding this case indistinguishable from *Nash,* as Rogers alleged Malloy's injuries were directly and proximately caused by Malloy's acceptance of LEE's advice to settle his workers' compensation claim and that advice was given and relied upon at mediation in North Carolina, and Malloy agreed to the settlement and executed the settlement agreement in North Carolina. Additionally, the trial court found Malloy sought out and retained an attorney licensed to practice in North Carolina to pursue a workers' compensation claim in North Carolina, his underlying workers' compensation claim was for injuries sustained in North Carolina while working for a North Carolina employer, and the parties' relationship was governed by the substantive law of North Carolina pursuant to the terms of their contract of representation. In regard to any public policy exception as a basis for declining to apply North Carolina's statute of repose, the trial court found the fact that the law of two states may differ does not necessarily indicate the law of one state violates the public policy of another. It noted our courts have specifically held the "good morals or natural justice" of South Carolina are not violated when foreign law is applied to preclude a tort action for money damages, even if recovery could be had in application of South Carolina law, and our courts have also repeatedly adhered to the *lex loci delicti* rule to apply foreign law to defeat a claim which would have survived under South Carolina law. Accordingly, it found North Carolina's statute of repose did not violate the public policy of South Carolina.

Rogers filed a motion to alter or amend, asserting the location where Malloy's "injury was manifested" was the key to applying South Carolina's choice of law jurisprudence, and because all of Malloy's financial injuries occurred in South Carolina, the substantive law of South Carolina governed this legal malpractice tort action. In argument before the trial court, Rogers cited *Lister v. NationsBank of Delaware, N.A.,* 329 S.C. 133, 494 S.E.2d 449 (Ct.App.1997) and *Bannister v. Hertz Corp.,* 316 S.C. 513, 450 S.E.2d 629 (Ct.App.1994) in support of her position that South Carolina substantive law controlled the tort claims. As to the trial court's finding that

the parties' relationship was governed by North Carolina law pursuant to the terms of their contract of representation, Rogers argued this was a misstatement, as the contract was between Malloy and the Law Office, not Attorney Lee individually. Rogers conceded that the contract of representation between Malloy and the Law Office contained a North Carolina choice of law provision which would operate to bar Malloy's breach of contract cause of action against the Law Office, but maintained such would not bar the other tort claims.

Following the hearing on Rogers' motion for reconsideration, the trial court issued an order finding *Lister* and *Bannister* to be distinguishable from the case at hand. The trial court further noted Rogers encouraged the court to read the principle that "the substantive law governing a tort action is determined by the state in which the injury occurred" to mean "the state in which the *results of the injury manifest themselves.*" The trial court then stated as follows: "Clearly, the financial harm to [Malloy] manifested itself in South Carolina because [Malloy] is and always has been a citizen of this state. However, the court cannot ignore that the entire transaction which led to [Malloy's] damages occurred in North Carolina." The trial court therefore declined to alter or amend its prior orders.

## LAW/ANALYSIS

### I. South Carolina Choice of Law Analysis

 Under South Carolina choice of law principles, the substantive law governing a tort action is determined by the state in which the injury occurred, commonly referred to as the *lex loci delicti* rule. *Boone v. Boone*, 345 S.C. 8, 13, 546 S.E.2d 191, 193 (2001); *Bannister*, 316 S.C. at 515, 450 S.E.2d at 630. A statute of repose "creates a *substantive right* in those protected to be free from liability after a legislatively-determined period of time," and it "constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation." *Nash*, 375 S.C. at 40, 650 S.E.2d at 83.

 We disagree with Rogers' assertion that the *lex loci delicti* is determined simply by the location of manifestation of a plaintiff's financial damages in a legal malpractice action.

South Carolina law clearly provides *lex loci delicti* is determined by the state in which *the injury occurred*, not where the results of the injury were felt or where the damages manifested themselves. *Boone*, 345 S.C. at 13, 546 S.E.2d at 193; *Bannister*, 316 S.C. at 515, 450 S.E.2d at 630. The alleged injury to Malloy was the loss of his opportunity to further pursue his underlying workers' compensation claim or settle for a greater sum of money, and this injury occurred in North Carolina where LEE undertook representation of Malloy in his workers' compensation claim, where Malloy accepted Attorney Lee's advice to settle his claim for $100,000, and where Malloy entered into the binding settlement agreement.

Additionally, we find Rogers' reliance on *Lister* is misplaced. There, the plaintiffs, while vacationing in Aruba, rented a vehicle from an Avis agency using their NationsBank Visa credit card. *Lister*, 329 S.C. at 138, 494 S.E.2d at 452. The car was involved in an accident, which plaintiffs averred was caused by a deflating tire, and the plaintiffs returned to Avis and discussed closing out their account. *Id.* The plaintiffs believed Avis closed out their credit card account. *Id.* at 139, 494 S.E.2d at 452. A few months later, however, plaintiffs discovered their credit card had been charged $7,696.63 for the wrecked vehicle, even though plaintiffs never authorized the charge. *Id.* Citing *Hester v. New Amsterdam Cas. Co.*, 287 F.Supp. 957 (D.S.C.1968), this court noted, *in a fraudulent misrepresentation action*, the place of the wrong is not where the misrepresentations are made but where the plaintiff, as a result of the misrepresentation, suffers a loss. *Lister*, 329 S.C. at 143, 494 S.E.2d at 455. The court then held "[s]ince the [plaintiffs] suffered their financial loss as a result of [the Avis employees'] misrepresentation [that they were authorized to charge the plaintiffs' credit card] in South Carolina, we conclude South Carolina law applies under the choice of law test for torts." *Id.* at 144, 494 S.E.2d at 455. In *Lister*, the injury that occurred was the misappropriation of the plaintiffs' money and this injury was directly to their money, which occurred in South Carolina. In *Lister*, the injury was not considered to have occurred in South Carolina simply because the plaintiffs resided in South Carolina and therefore felt the financial consequences of it there. Rather, as noted by this court in *Lister*, "South Carolina was the place

where the money was wrongfully appropriated." *Id.* at 145, 494 S.E.2d at 456. Additionally, in coming to its conclusion in *Lister,* this court relied on the South Carolina federal district court case of *Hester,* another fraudulent misrepresentation matter. *Id.* at 143, 494 S.E.2d at 455. In *Hester,* the court found the place of the wrong was not in the place where fraudulent misrepresentations were made concerning the plaintiff's purchase of land. 287 F.Supp. at 972. Rather, it found the place of the wrong was in Florida, where the transaction occurred and was culminated and the land was located, as this was where the plaintiff, as a result of the misrepresentation, suffered a loss. *Id.* Notably, the court found the place of injury was Florida, even though the plaintiffs resided in Georgia. *Id.*

We likewise find no merit to Rogers' assertion that the trial court's reconsideration order was contrary to the law in *Bannister.* That case involved the rental of a van in New York from Hertz Corporation to transport New York residents to South Carolina. 316 S.C. at 515, 450 S.E.2d at 630. The van was involved in an accident in North Carolina, resulting in injury to Bannister and her daughter and the death of Bannister's husband. *Id.* Bannister brought actions in South Carolina against Hertz for negligence, alleging the driver was a permissive bailee, and moved for summary judgment on the ground New York law governed Hertz's vicarious liability for the negligence of the driver. *Id.* Hertz argued North Carolina substantive law should apply to the tort action, and under North Carolina's substantive law, it could not be held vicariously liable. *Id.* In reversing the trial court's application of New York law, this court noted "[u]nder South Carolina conflict of law principles, the substantive law governing a tort action is determined by the state in which the injury occurred," and found "North Carolina substantive law therefore governs this case." *Id.* at 515–16, 450 S.E.2d at 630. As previously stated, the place in which the injury occurred in the case at hand was in North Carolina, where Malloy allegedly sustained a loss of his opportunity to further pursue his underlying workers' compensation claim or settle for a greater sum of money.

Rogers also takes issue with the trial court's finding that, "[a]lthough the parties entered into their relationship in South

Carolina, that relationship was governed by the substantive law of North Carolina pursuant to the terms of the [c]ontract of [r]epresentation." We disagree with Rogers' assertion this is a "misstatement" by the trial court because the contract was entered into between Malloy and the Law Office, and Attorney Lee was not an individual party to the contract. First, Rogers alleged in her complaint that "[a]t all times relevant hereto, [Attorney Lee] is or was acting as an agent for [t]he Law [O]ffice"; that "[t]he negligent acts, omissions, and liability of [the Law Office] include[ ] the acts and/or omissions of [its] agents, principals employees and/or servants, including but not limited to those by [Attorney Lee]"; and that "[the Law Office] acted by and through its employees and agents, included but not limited to Defendant, [Attorney Lee], who acted within the course and scope of his employment and/or agency." Additionally, Rogers admitted in her discovery responses to Attorney Lee's requests to admit that "the lawyer-client relationship between [Malloy] and [Attorney Lee] was entered into pursuant to the terms of the [c]ontract of [r]epresentation." Further, as noted by LEE, after indicating Malloy retained the Law Office to represent him in his workers' compensation claim, the agreement's next sentence states Malloy "authorized the attorneys to take all appropriate actions to resolve the claim." Thus, it is clear Attorney Lee and the Law Office were considered one and the same. Accordingly, we find no error in the trial court's determination the relationship between LEE—which includes Attorney Lee—and Malloy was governed by the substantive law of North Carolina pursuant to the choice of law provision in the contract.

## II. State Where the Client Resided at the Time of the Injury

Rogers next urges this court to adopt the substantive law of the state where a plaintiff resided at the time of the injury to govern legal malpractice claims, asserting this would improve "predictability in determining choice of law problems." In so arguing, Rogers cites several cases from other jurisdictions. However, in all but one of these cases, the courts in those jurisdictions applied a different choice of law test—the most significant relationship test or some similar test—and not *lex loci delicti* in determining the substantive law to be applied.

The only case cited by Rogers not involving the application of an alternate choice of law test is *Dow v. Jones*, 311 F.Supp.2d 461 (D.Md.2004). In that legal malpractice case, Dow met with the defendant attorney at the attorney's Washington, D.C. law office, where the attorney agreed to represent Dow on a criminal charge in Maryland. *Id.* at 463. The court noted "[u]nder Maryland conflict of law rules, a tort claim is governed by the law of the place where the injury occurred, which is the place where the last act required to complete the tort occurred." *Id.* at 466 n. 3. The court found, while legal malpractice liability could arise under either tort or contract law, Dow's complaint was framed as sounding in tort. *Id.* The court then determined the alleged tort occurred in Maryland, which is where the underlying criminal trial that was the basis for the legal malpractice action was held. *Id.* The *Dow* decision was not dependent, as Rogers implies, upon the plaintiff having sustained any financial injury in Maryland or the fact that the plaintiff resided in Maryland.

The circumstances and legal determinations in the cases from the other jurisdictions cited by Rogers are readily distinguishable from the case at hand, and we are not persuaded our courts should blindly apply the residence of a plaintiff in a legal malpractice claim as the location of the injury.[2] We decline to depart from our courts' traditional application of *lex loci delicti* in determining the substantive law to be utilized in tort causes of action. Neither are we convinced it would be appropriate to adopt an exception for torts involving legal malpractice claims.

### III. Public Policy

Rogers also argues South Carolina has an interest in compensating victims of legal malpractice for injuries accruing in

---

**2.** We do not believe the law of this state is so broad as to find the *lex loci delicti* is the state in which the plaintiff resides simply because he suffers financial damage there. As observed by the trial court, under Rogers' argument, whenever an attorney licensed to practice in South Carolina brings a tort claim in this state on behalf of an out-of-state litigant involved in an automobile accident in this state, and that litigant thereafter sues the attorney for malpractice, the substantive law to be applied would be the law of whatever state the plaintiff resided, regardless of the fact that the underlying action was brought in South Carolina by a South Carolina-licensed attorney for injuries the plaintiff sustained in South Carolina.

South Carolina and in regulating the conduct of persons within its territory and providing redress for injuries that occur here. Noting South Carolina failed to adopt a statute of repose for legal malpractice, she contends it was error for the trial court to impose a North Carolina statute of repose to avoid a South Carolina cause of action in this matter. Essentially, Rogers appears to argue our courts should apply a public policy exception and decline to give effect to the North Carolina statute of repose in question.

■ "[F]oreign law may not be given effect in this State if 'it is against good morals or natural justice . . .' " *Dawkins v. State*, 306 S.C. 391, 393, 412 S.E.2d 407, 408 (1991) (quoting *Rauton v. Pullman Co.*, 183 S.C. 495, 508, 191 S.E. 416, 422 (1937)). "[U]nder the 'public policy exception,' the Court will not apply foreign law if it violates the public policy of South Carolina." *Boone*, 345 S.C. at 14, 546 S.E.2d at 193. Our courts "will refuse to follow [the law of *lex loci delicti*] when it is against good morals or natural justice, or 'for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens.' ". *Id.* (citing *Dawkins*, 306 S.C. at 393, 412 S.E.2d at 408 and *Rauton*, 183 S.C. at 508, 191 S.E. at 422). However, "[t]he 'good morals or natural justice' of our State are not violated when foreign law is applied to preclude a tort action for money damages, whether against an individual or the State, even if recovery may be had upon application of South Carolina law.' " *Dawkins*, 306 S.C. at 393, 412 S.E.2d at 408. Further, even though the law of two states may differ, this fact "does not necessarily imply that the law of one state violates the public policy of the other." *Id.* (citation omitted).

We cannot say the public policy of this state would be violated by application of North Carolina's statute of repose in this matter, as the good morals or natural justice of our State would not be violated. Thus, we find no public policy exception to the *lex loci delicti* rule would be appropriate in this case. *See Dawkins*, 306 S.C. at 392–93, 412 S.E.2d at 408 (declining to recognize a public policy exception to the *lex loci delicti* rule and determining application of Georgia substantive law, which required actual bodily contact with a plaintiff as a result of the defendant's conduct in emotional distress actions, was appropriate); *Nash*, 375 S.C. at 42, 650 S.E.2d at 84

(wherein this court concluded North Carolina's shorter, six-year statute of repose for actions alleging defective or unsafe conditions of an improvement to realty, as opposed to South Carolina's eight-year statute of repose in such actions, did not violate public policy).

## IV. Rogers' Remaining Arguments

Rogers argues on appeal that North Carolina law governs the proximate cause element of the malpractice claims. She further asserts South Carolina's three-year statute of limitations and discovery rule are procedural laws which would govern Malloy's claims.[3] The only issue before the trial court on LEE's motion for summary judgment dispositive of this appeal concerns whether North Carolina substantive law should apply such that its statute of repose bars this claim. Because we find it does apply, these other arguments raised by Rogers need not be addressed. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

## CONCLUSION

Based on the foregoing, we affirm the trial court's grant of summary judgment for LEE based on application of North Carolina's statute of repose.

**AFFIRMED.**

WILLIAMS, J., concurs.

FEW, C.J., concurring.

I agree that when a South Carolina lawyer represents a South Carolina resident before the North Carolina Industrial Commission, and the client subsequently sues the lawyer for

---

**3.** Although Rogers made these arguments to the trial court within the context of her assertion that South Carolina substantive law should generally govern Malloy's legal malpractice claims, and continued to assert the argument concerning application of North Carolina law on the issue of proximate cause in her motion to alter or amend, the trial court never specifically addressed these arguments. This is likely so because they were not necessary for the determination of whether North Carolina's statute of repose would apply to bar Malloy's claims.

malpractice that occurred in North Carolina exclusively in the course of the representation before the North Carolina forum, the substantive law of North Carolina applies to the malpractice claim. Specifically, I agree with the majority and the circuit court the client must bring an action against the lawyer within the time limit imposed by the North Carolina statute of repose—N.C. Gen.Stat. § 1–15(c) (2013). I write separately to emphasize that the choice of law provision in the original fee agreement does not govern the entire relationship between the lawyer and the client.

Mark A. Malloy was a South Carolina resident on September 9, 2002, when he sustained a serious head injury in a workplace accident in North Carolina. On April 16, 2003, Malloy sat down in the Law Offices of Lee & Smith, P.A. in Spartanburg, South Carolina to meet with Kenneth E. Lee, an attorney licensed in South Carolina, as well as North Carolina. As the majority emphasizes, the fee agreement Malloy signed that day indicates the purpose of the representation included pursuing a workers' compensation claim. However, the fiduciary duty Lee and his law firm assumed by representing Malloy provided the lawyers in the firm the opportunity to consider a variety of other options, including (1) considering whether Malloy should go to probate court to have a guardian and/or conservator appointed;[4] (2) advising Malloy a lawyer could investigate a third-party action, such as a claim against the ladder manufacturer, the floor installer, or his medical providers, some of which the record indicates were in South Carolina; (3) pursuing a workers' compensation claim, possibly in South Carolina;[5] and (4) advising Malloy he could

4. The record indicates Malloy's head injury was serious enough to raise the question of whether he was competent to handle his own affairs.

5. The record indicates Malloy's employer was Aneco Electrical Construction, which is based in Clearwater, Florida but does business throughout the southeastern United States, apparently including South Carolina. The record does not indicate whether Aneco hired Malloy in South Carolina, which, if Aneco regularly employs four or more employees here, would give the South Carolina workers' compensation commission jurisdiction to award him benefits. *See* S.C.Code Ann. § 42–15–10 (2015) (providing an "employee covered by the provisions of this title is authorized to file his claim under the laws of the state where he is hired"); S.C.Code Ann. § 42–1–360 (2015) ("This title does

pursue a claim for social security disability under federal law in South Carolina.[6] In fact, the record indicates Lee's law firm represented Malloy in a federal disability claim based on the injuries he sustained on September 9, 2002.

In that initial conversation, therefore, Lee's duty to exercise reasonable care related to a variety of options that included the possibility of bringing an action in South Carolina. That duty of due care arose under South Carolina law. The fact that one of the services Lee eventually performed for Malloy involved a proceeding before the North Carolina Industrial Commission does not automatically transform the entire attorney-client relationship to one arising under North Carolina law, and neither does the choice of law provision in the fee agreement that covered only that proceeding. Rather, the fact of proceeding before the North Carolina forum simply invokes the substantive law of that state for the lawyer's actions in the course of that component of the representation.

not apply to ... (2) any person who has regularly employed in service less than four employees in the same business within the State....").

6. Federal law provides that a disability claim may be filed and heard anywhere, 20 C.F.R. § 405.315 (2015); 20 C.F.R. § 404.614 (2015), but the claimant "may obtain a [judicial] review of [the] decision by a civil action ... in the district court ... for the judicial district in which the plaintiff resides," 42 U.S.C. § 405(g) (2012).