# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Daniel O'Shields and Roger W. Whitley, a Partnership d/b/a O&W Cars, Appellants,

v.

Columbia Automotive, LLC d/b/a Midlands Honda, Respondent.

Appellate Case No. 2017-000902

---

Appeal From Richland County
R. Ferrell Cothran, Jr., Circuit Court Judge

---

Opinion No. 5845
Heard March 1, 2021 – Filed August 11, 2021

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

C. Steven Moskos, of C. Steven Moskos, PA, and Brooks Roberts Fudenberg, of the Law Office of Brooks R. Fundenberg, LLC, both of Charleston, for Appellants.

James Y. Becker and Robert Lawrence Reibold, both of Haynsworth Sinkler Boyd, PA, of Columbia; Sarah Patrick Spruill, of Haynsworth Sinkler Boyd, PA, of Greenville; and Harry Clayton Walker, Jr., of Haynsworth Sinkler Boyd, PA, of Charleston, all for Respondent.

---

**KONDUROS, J.:**  This case arises out of the sale of a 2003 Honda Civic by Columbia Automotive, LLC d/b/a Midlands Honda (Midlands) to Daniel O'Shields and Roger W. Whitley, together d/b/a O&W Cars (O&W), at the Automobile Dealer Exchange Services of America (ADESA) auction in North Carolina.  After becoming aware the car had been "clipped"—reconstructed from two cars—O&W brought claims against Midlands in South Carolina for breach of contract, negligent misrepresentation, violation of the North Carolina Unfair Trade Practices Act (NCUTPA), and fraud.[1]  After trial, the jury returned a verdict for O&W in the amount of $6,645 in actual damages with respect to O&W's NCUTPA claim, and $6,645 actual damages and approximately $2.38 million in punitive damages for fraud.[2]  The circuit court required O&W to elect between the punitive damages award and any attorney's fees award under the NCUTPA claim, and O&W elected to recover under the NCUTPA verdict.  In its orders regarding post-trial motions, the circuit court reduced the punitive damages award to $46,515; awarded attorney's fees in the amount of $21,264; and denied offer of judgment interest to O&W.  O&W appeals the rulings therein and the circuit court's ruling on election of remedies. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

Sandra Gaskins bought the new 2003 Honda Civic in August 2003.  In July 2004, Gaskins' daughter had an accident while driving the car, and it was deemed a total loss.  Gaskins's insurer, Nationwide Mutual Insurance Company (Nationwide), bought the car and sold it at a salvage auction.  An undetermined person modified the damaged car by welding the front half of the car to the back half of another car, and put it back into the stream of commerce.  In June of 2008, Nancy Watkins sold the car to Midlands, and the car had a clean title.  In July, the car underwent a 159-point inspection at Midlands, including an oil change, and was placed in Midlands'

---

[1] The parties and the circuit court agreed North Carolina's substantive law would apply in the case because North Carolina was the place of the contract at issue and the location of the alleged injury. *See Lister v. NationsBank of Del., NA.*, 329 S.C. 133, 144, 494 S.E.2d 449, 155 (Ct. App. 1997) ("in contract actions, South Carolina courts apply substantive law of place where contract at issue was formed and this rule applies where contract's formation, interpretation, or validity is at issue; however, where performance is at issue, law of place of performance governs." (citing *Witt v. Am. Trucking Ass'n, Inc.,* 860 F.Supp. 295, 300 (D.S.C. 1994))).

[2] The other claims were dismissed prior to trial.

certified preowned vehicle inventory.  In August, Charles Ecklund purchased the car without knowledge of its modification.

In March 2010, Ecklund had an accident while driving the car and in having the vehicle repaired discovered it was clipped.  Ecklund's wife notified Midlands of the issue by phone message.  Near the end of the month, Ecklund traded the car in to Midlands.  Within the next few days, Midlands placed the vehicle for sale at the ADESA auction in North Carolina under a red-light designation, which indicates the sale is "as is," but which also includes rules regarding disclosure as to certain types of defects or damage.  Midlands did not notify the auction the car was clipped.  An employee of the auction completed the disclosure form as power of attorney for Midlands.

O&W purchased the car for $5,200 at the auction on April 1, 2010.  In late June, O&W sold the car to the White family for $6,800.  In July, the Whites brought the car back to replace the timing belt and water pump, as they had discussed with Whitley, who agreed at the time of sale to provide the labor for those repairs.  When the car was placed on the lift at a nearby garage, the technician was able to clearly see the car had been clipped, and indicated it was "a chopped up mess underneath."  O&W refunded the purchase money to the Whites and retook possession of the car when the defect was discovered.

O&W sought to arbitrate the issue through the ADESA auction but was told the time period to seek arbitration had passed.  Eventually, O&W filed the subject litigation in January of 2013.  The matter proceeded to trial on April 18, 2016, in Richland County, and the jury returned a verdict for O&W for actual damages in the amount of $6,645 on each of O&W's causes of action.  In a bifurcated punitive damage hearing, the jury rendered a verdict for O&W for punitive damages in the amount of $2,381,888.

Both parties filed posttrial motions.  O&W moved to treble the verdict under the NCUTPA and for attorney's fees and costs.  O&W also moved for offer of judgment interest under section 15-35-400 of the South Carolina Code (Supp. 2020), and for prejudgment interest.  Midlands moved for judgment notwithstanding the verdict (JNOV) or in the alternative a new trial.

Midlands also filed a motion to require O&W to elect a remedy and moved for an order to reduce the punitive damages award to comply with section 1D-25 of the North Carolina General Statute and for an order to set off the judgment with the

amount previously paid by Nationwide.[3]  The circuit court granted Midlands' motion to require O&W to elect a remedy on May 18, 2016.  On May 23, 2016, O&W moved to request reconsideration, asking the circuit court to allow it to elect a remedy after the court made its decision on the other motions, the rulings of which would impact O&W's election decision.

The circuit court heard posttrial motions on July 27, 2016.  The circuit court reduced the punitive damages award to $46,515 and granted $21,264 in attorney's fees and $529.07 in costs.  The court also denied O&W's motion for offer of judgment interest.

By email on August 29, 2016, the circuit court notified counsel for the parties of its decision to direct O&W to elect from the following remedies: (1) treble damages of $19,935 ($6,645 in actual damages times three) and attorney's fees of $21,264 for the NCUTPA cause of action, for a combined total of $41,199 or (2) actual damages of $6,645 and punitive damages reduced to $46,515 for the fraud cause of action, for a total of $53,160.

Without waiving its assertion it should not be required to elect between attorney's fees under the NCUTPA and actual and punitive damages on the fraud cause of action, O&W elected the first option, choosing treble damages and attorney's fees pursuant to the NCUTPA.  Thereafter, O&W sought additional attorney's fees for work performed for additional time periods.  This appeal followed.

**LAW/ANALYSIS**

## I.  Punitive Damages[4]

---

[3] Midlands later withdrew its motion for setoff.

[4] Midlands argues O&A waived its right to complain about the reduction in punitive damages by electing its remedy under the NCUTPA instead of its fraud cause of action.  This argument is without merit.  While "acts inconsistent with the continued assertion of a right may constitute waiver," O&A did not elect a remedy of its own accord but was required to by the circuit court.  *MailSource, LLC v. M.A. Bailey & Assocs., Inc.*, 356 S.C. 370, 375, 588 S.E.2d 639, 642 (Ct. App. 2003).  Additionally, Midlands continued to assert its position at trial and on appeal.

O&A contends the circuit court erred in reducing the jury's punitive damages award to $46,515 on the basis that the jury's award of $2,381,888 was excessive by constitutional standards.[5]  We disagree.

"Whether a punitive damages award is unconstitutionally excessive is a question of law reviewed de novo on appeal."  *Everhart v. O'Charley's Inc.*, 683 S.E.2d 728, 740 (N.C. Ct. App. 2009).  When a punitive damages award is "grossly excessive," it violates the due process clause of the Fourteenth Amendment.  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).  *Gore* set out three "guideposts" for evaluating whether a punitive damages award is grossly excessive: "the degree of reprehensibility of the nondisclosure; the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases."  *Id.* at 574-75.  We will address each of the *Gore* guideposts in turn.

### A. Reprehensibility

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (quoting *Gore*, 517 U.S. at 575).

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.  The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive

---

[5] North Carolina law provides that "[p]unitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater."  N.C. Gen. Stat. § 1D-25(b) (Westlaw through S.L. 2021-17 of the 2021 Legis. Sess.).  O&A acknowledges this statutory cap on a punitive damages award.

> damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Id.* (citation omitted).

The harm in this case to the plaintiff was economic. The "target" of the conduct was ADESA auction buyers as opposed to the general consumer.[6] No evidence demonstrated other instances in which Midlands had failed to make disclosures on an ADESA auction form or sold a clipped car through its certified program, and no direct evidence established the harm to O&W was intentional.

O&W rests its reprehensibility argument on the premise that Midlands, knowingly and intentionally, put a "Frankencar" on the road with no regard to the safety of others. O&W contends it strains credulity for Midlands to claim it was unaware the car had been clipped when Midlands originally sold it to Ecklund. However, Midlands obtained the car with a clean title because Nationwide failed to have the title marked "salvage." *See* N.C. Gen .Stat. § 20-71.3 (Westlaw through S.L. 2021-17 of the 2021 Legis. Sess.) (indicating a title of a salvage, rebuilt, or reconstructed vehicle must be so branded). In the absence of notice the car was salvaged, Midlands would not have been anticipating a clipped vehicle.[7] O&A asserts the damage to the car would have been obvious. However, O&A's examination of the vehicle was two years and approximately 30,000 miles after Midlands' original inspection. Once Ecklund returned the car to Midlands, Midlands did not put the vehicle back on its lot, but sold it "as is" at auction, under a red light. While it failed to disclose the damage, such disclosure requirement had only been added at the auction several months prior without notice to Midlands of the change in

---

[6] "Most ADESA auctions are for licensed, registered car and specialty dealers only." ADESA, https://www.adesa.com/public-auctions (last visited June 14, 2021).

[7] The mechanic who performed the original inspection on Midlands' behalf was deceased at the time of trial.

terms.[8]  Ignorance is not an excuse for negligent conduct, but the record does not bear out a deliberate, willful, or repeated violation of the disclosure requirements.

Accordingly, we agree with the circuit court's assessment that the reprehensibility of Midlands' conduct is less than that required for such a large punitive award.

## B. Amount of Actual Harm v. Punitive Damages Amount

The United State Supreme Court has declined on multiple occasions "to impose a bright-line ratio which a punitive damages award cannot exceed." *Campbell*, 538 U.S. at 424.  "Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id*. at 425.  "While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1." *Id*.  "Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a 'particularly egregious act has resulted in only a small amount of economic damages.'" *Id*. (quoting *Gore*, 517 U.S. at 582).  "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id*.

In the instant case, the punitive damages award by the jury constituted a 358:1 ratio.  A reduction to the $250,000 statutory cap would result in a 37.5:1 ratio, and a reduction to the circuit court's punitive award amount would result in a 7:1 ratio. Because O&A essentially concedes the statutory cap applies, the real question is whether a 37.5:1 ratio violates due process; on its face, and under North Carolina law, not necessarily so.

In *Lacey v. Kirk*, 767 S.E.2d 632, 646-47 (N.C. Ct. App. 2014), the court upheld a 38:1 ratio when an executrix had, without basis, denied the testator's heirs their bequeathed property and accused them of murder, finding the executrix's conduct

---

[8] The ADESA auction changed its required disclosure form approximately four months prior to the sale at issue.  Under the terms of Midlands' agreement with ADESA, ADESA is to notify any auction participants in writing regarding any changes to their procedures.  Midlands did not receive notice of the change to the disclosure form.

extremely reprehensible and obviously willful. In *Rhyne v. K-mart Corp.*, 562 S.E.2d 82, 94 (N.C. Ct. App. 2002), the court upheld a 30:1 and 23:1 ratio in favor of a husband and wife respectively who were violently and wrongfully detained and prosecuted by K-mart employees. In *Everhart*, 683 S.E.2d at 741, the court found a 25:1 ratio did not violate due process when the plaintiff had accidentally ingested bleach in the restaurant and the O'Charley's company policy placed the health and safety of the customer behind the corporation's need to complete paperwork in anticipation of litigation.

These cases are distinguishable from the case sub judice. In *Everhart* and *Rhyne*, the harm to plaintiffs was physical. In *Lacey*, the damage was economic, but extremely willful. In this case, as discussed under the first guidepost, the damage to plaintiff was economic and the conduct, while reckless, was not as demonstrably willful nor intended to harm as that in *Lacey*. Based on the circumstances of this case, we agree with the circuit court that the objectionable conduct in this case is more commensurate with a 7:1 ratio.

## C. Criminal or Civil Penalties in Comparable Cases

"The third *BMW* 'guidepost' requires consideration of civil or criminal penalties that could be imposed for comparable misconduct, giving 'substantial deference' to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *Rhyne*, 562 S.E.2d at 94 (quoting *BMW*, 517 U.S. at 584).

The conduct for which Midlands was found liable could subject it to both civil and criminal penalties. A violation of the NCUTPA exposes the defendant to treble damages. *See* N.C. Gen. Stat. § 75-16 (Westlaw through S.L. 2021-17 of the 2021 Legis. Sess.) (stating a party injured under the NCUTPA "shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict"). A failure to disclose also constitutes a Class 2 misdemeanor. *See* N.C. Gen. Stat. § 20-71.4. (a)(2) ("It shall be unlawful for any transferor of a motor vehicle to . . . [t]ransfer a motor vehicle when the transferor has knowledge that the vehicle is, or was . . . a salvage motor vehicle, without disclosing that fact in writing to the transferee prior to the transfer of the vehicle."); *see also* N.C. Gen. Stat. § 20-71.4. (a)(2)(d) ("Violation of subsections (a) and (b) of this section shall constitute a Class 2 misdemeanor.") A Class 2 misdemeanor with no prior convictions is subject to one [to] thirty days of a community punishment that may be executed as a fine. N.C. Gen. Stat. § 15A-

1340.23 (c)(1) to (2) (Westlaw through S.L. 2021-17 of the 2021 Legis. Sess.).[9] If the punishment is a fine, it shall not exceed $1,000. N.C. Gen. Stat. § 15A-1340.23 (b) (Westlaw through S.L. 2021-17 of the 2021 Legis. Sess.).

In this case, Midlands' failure to disclose constitutes a misdemeanor offense not punishable by imprisonment and with civil penalties limited to three times the amount of actual damages. This factor tends to support a punitive damages award that is closer to a trebling of the actual damages, which in this case would be in line with the circuit court's reduction to a 7:1 ratio.

In sum, based on a review of the guideposts in *Gore*, we affirm the circuit court's reduction of punitive damages based on the facts of this case to $46,515.

## II. Attorney's Fees

In this case, O&W has requested a total of $476,194.12 in attorney's fees. The circuit court awarded $21,264 in fees and $529.07 in costs. The circuit court made this reduction for several reasons and O&W raises numerous points on appeal. We will address each in turn.[10]

---

[9] In *Everhart*, the court noted the United States Supreme Court recognized conduct that subjected the defendant to imprisonment may justify a larger punitive damages award. 683 S.E.2d at 741. The criminal statute at issue in *Everhart* involved the adulteration of food and was considered a Class 2 misdemeanor. At that time this subjected the defendant to up to 60 days imprisonment. *Id*. However, the sentencing statute has been adjusted, and now, a Class 2 misdemeanor imposes a community-only sentence as opposed to imprisonment. N.C. Gen. Stat. § 15A-1340.23 (c)(1) to (2).

[10] As an initial matter, the South Carolina standard of review will apply to the consideration of the attorney's fee award. *See e.g., Boswell v. RFD-TV the Theather, LLC*, 498 S.W.3d 550, 557 (Tenn. Ct. App. 2016) (holding standard of review is procedural and will governed by forum law); *Moore v. Bi-State Dev. Agency*, 87 S.W.3d 279, 285 (Mo. Ct. App. 2002) (finding the standard of review is a procedural issue and forum law governs the standard of review for uses raised on appeal). Under South Carolina law, the determination of the amount of attorney's fees awarded pursuant to a statute is addressed to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *EFCO Corp. v. Renaissance on Charleston Harbor, LLC*, 370 S.C. 612, 621, 635 S.E.2d 922, 926 (Ct. App. 2006).

First, O&W argues the circuit court erred by apportioning attorney's fees between its NCUTPA and fraud claims. We agree.

Under the NCUTPA, the circuit court has the discretion to award attorney's fees if it determines "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. § 75-16.1(1). In some cases, apportioning attorney's fees between claims made by the plaintiff is appropriate. "However, where all of plaintiff's claims arise from the same nucleus of operative facts and each claim [is] 'inextricably interwoven' with the other claims, apportionment of fees is unnecessary." *Whiteside Ests.*, *Inc. v. Highlands Cove, L.L.C.*, 553 S.E.2d 431, 443 (N.C. Ct. App. 2001) (quoting *Okwara v. Dillard Dep't. Stores, Inc.,* 525 S.E.2d 481, 487 (N.C. Ct. App. 2000)). When competent evidence in the record supports a finding that claims arose from a common nucleus of operative facts, attempting to separate the fees may be unrealistic. *Id.*

In this case, the circuit court attempted to carve out hours O&W's attorneys billed for work on the fraud claim for two reasons: (1) the attorney's fees award is authorized under the NCUTPA, not the common law claim of fraud, and (2) a fair portion of hours billed related to the pursuit of punitive damages, again, something not allowed under the NCUTPA. However, North Carolina cases do not appear to limit recovery of attorney's fees in this manner, provided the nucleus of operative facts test is met. In *Okwara*, the court declined to apportion fees between the plaintiff's § 1983 claim, which provided for attorney's fees, and her common law tort claim when both arose from a common nucleus of operative facts. 525 S.E.2d at 486-87. Likewise, in *Whiteside*, the court declined to apportion fees authorized by the Sedimentation Pollution and Control Act of 1973 and plaintiff's common law actions for nuisance and trespass, finding such division both "unnecessary and unrealistic" when the claims arose from the same nucleus of facts. 553 S.E.2d at 443. More recently, in *Philips v. Pitt County Memorial Hospital, Inc.*, the court declined to apportion fees awarded to the defendant for defending a frivolous punitive damages claim when the same nucleus of operative facts gave rise to the plaintiff's punitive damages claims as well as the underlying tortious conduct. 775 S.E.2d 882, 884-85 (N.C. Ct. App. 2015).

Based on the relevant case law and facts of this case, we conclude the circuit court erred in apportioning attorney's fees between the NCUTPA claim and the fraud claim which necessarily includes the pursuit of punitive damages. The underlying

conduct in the case was overlapping and the services could not reasonably and readily be separated.

Next, O&W appeals the trial court's ruling that Midlands had no longer refused to fully resolve the matter when it made a settlement offer to O&W on September 14, 2016.  The NCUTPA only provides for attorney's fees when "there was an unwarranted refusal . . . to fully resolve the matter which constitutes the basis of such suit."  N.C. Gen. Stat. § 75-16.1.  The conduct of both the defendant and the plaintiff are relevant in determining this issue.  *See DENC, LLC v. Phila. Indem. Ins. Co.*, 454 F. Supp. 3d 552, 566-67 (M.D.N.C. 2020) (evaluating both parties' conduct during settlement negotiations when determining whether the defendant unreasonably refused to resolve the matter at issue).

The settlement offer, made after the trial and rulings on posttrial motions, was based on paying O&A the actual damages amount awarded ($6,645), the attorney's fees awarded ($21,264), and the reduced punitive damages awarded ($46,515).  Midlands made a mathematical error in adding these awards and offered $81,069.  In response to the settlement offer, O&A noted the mathematical error and flatly declined the offer.  Midlands acknowledged its mistake, indicated there may be some room to negotiate, and twice asked O&A for a counteroffer.  O&A did not respond.  While we understand O&A believed its claims to be worth more than the offered amount, the summary dismissal of the offer to negotiate tempers any finding of an unreasonable refusal to resolve the case on Midlands' part.  Therefore, the circuit court did not abuse its discretion in concluding Midlands was no longer unwilling to fully resolve the matter at that point.  Consequently, we affirm the circuit court's finding that attorney's fees accrued after this date would be excluded from the circuit court's calculation of fees.[11]

---

[11] The court also denied the final supplemental request for attorney's fees on the basis that O&A's attorneys were not expending time to "protect the judgment."  *See Faucette v. Carmel Road, LLC*, 775 S.E.2d 316, 326 (N.C. Ct. App. 2015) (indicating a trial court may award attorney's fees for posttrial or appellate work by a prevailing party on an unfair trade practices claim when such work is expended in an effort to protect the judgment); *see also Cotton v. Stanley*, 380 S.E.2d 419, 422 (N.C. Ct. App. 1989) ("Fees are authorized for the prevailing party and may be awarded for all time, including appeal, reasonably expended in obtaining or sustaining the status of prevailing party.").  This is an additional ground that sustains the circuit court's decision not to award those requested fees.  *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("[I]f

Third, O&W maintains the circuit court erred in excluding time for travel. We agree.

The circuit court excluded some hours, with no legal citation for its decision, based on "Plaintiff's choice to use a Charleston lawyer to bring suit in Richland County, rather than bringing the action in North Carolina. While Plaintiff was free to file suit in South Carolina, the [c]ourt will not impose the extra cost of this decision on the Defendant." The purpose of the fee award is to encourage private enforcement of the NCUTPA. *See Cotton*, 380 S.E.2d at 421 ("One purpose for the statute authorizing attorneys' fees is to encourage individuals to bring valid actions to enforce the statute by making such actions economically feasible."). O&W was free to use counsel of its choice and should not be penalized for selecting a permissible forum and attorneys licensed to practice therein.

Finally, O&W claims the circuit court erred in applying a percentage reduction to effectuate a "reasonable attorney's fee" under *Hensley v. Eckerhart*, 461 U.S. 424 (1983). We disagree.

In North Carolina cases discussing reasonable attorney's fees, no matter the outcome, the touchstone is *Hensley*.[12] *Hensley*, a civil rights case, prompted the following discussion by the court.

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were

convinced it is proper and fair to do so," the appellate court may rely on an additional ground to affirm the lower court's judgment.).

[12] *See DENC, LLC*, 454 F. Supp. 3d at 563 ("The Court may only award 'reasonable' attorneys' fees [under the NCUTPA]. Federal courts routinely apply the considerations set forth in *Hensley* . . . and North Carolina courts have cited and applied *Hensley* in a number of cases involving state statutes with fee-shifting provisions.")

unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

. . . .

If . . .  a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.

. . . .

There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.  This discretion, however, must be exercised in light of the considerations we have identified.

*Id. at* 433-37.

 In an attempt to synthesize this calculation process, the Fourth Circuit Court of Appeals has said:

To determine the appropriate amount [of attorney's fees to be awarded], a district court should first identify the number of hours reasonably expended on the litigation and multiply that number by a reasonable rate.  The court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.  Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining

> amount, depending on the degree of success enjoyed by the plaintiff.

*Johnson v. City of Aiken*, 278 F.3d 333, 336-37 (4th Cir. 2002) (citations omitted).

As noted in the discussion on apportionment, several more recent North Carolina state cases indicate that fees do not have to be apportioned if they arise from a common nucleus of operative facts. Nevertheless, the final step as discussed in *Hensley* and *Johnson*, means the circuit court retains discretion—after making a decision about apportionment—to reduce the amount of fees based on the partial or limited success of the litigation, whether the claims are related or not.[13]

To summarize, we remand the issue of attorney's fees to the circuit court. On remand, the circuit court should not seek to apportion requested fees between the fraud and the NCUTPA claims. The circuit court may exclude fees incurred after the date of the September 2016 settlement offer. The circuit court should eliminate any redundant fees, improper cost, and paralegal fees as it had in the previous award. However, the court should not exclude fees for travel. Finally, the circuit court may—or may not—reduce the remaining amount of requested fees by a percentage it finds is appropriate to reflect reasonable attorney's fees based on the

---

[13] *Morris v. Scenera Research, LLC,* 747 S.E.2d 362, 379 (N.C. Ct. App. 2013), *aff'd in part, rev'd in part*, 788 S.E.2d 154 (N.C. 2016), cited to by O&A, muddied the waters a bit on this issue. In it, the court "reverse[d] the business court's award of attorneys' fees and remand[ed] to the trial court for further findings of fact and conclusions of law regarding whether Morris's claims arose from a common nucleus of operative fact and, thus, whether he is entitled to all of his attorneys' fees." This truncated mandate suggests that if the claim entitling the plaintiff to attorney's fees and any additional claims arose from a common nucleus of facts, then the plaintiff should be awarded all the requested fees. The court of appeals so directed the lower court because it believed the trial court's fee reduction rested on apportionment that was made without factual findings to support such division. *Id*. at 378-79. On remand, the trial court issued an unpublished opinion stating it believed the discretion to reduce the attorney's fees to a "reasonable amount" by a percentage pursuant to *Hensley* was usurped by the court of appeals' mandate. *Morris v. Scenera Rsch., LLC*, No. 09 CVS 19678, 2017 WL 2380230 at *2 (N.C. Super. Ct. May 31, 2017). However, the court of appeals opinion cites to *Hensley* as authoritative, and *Hensley* provides for a reduction in fees based on partial or limited success even if the claims are related.

success of the litigation. This percentage may be impacted by the decision of the court regarding the election of remedies, which will be addressed in the next section.

## III.     Election of Remedies

O&W argues the circuit court erred in requiring it to elect between attorney's fees and punitive damages. We agree.

In *United Laboratories, Inc. v. Kuykendall*, 437 S.E.2d 374 (1993), United Labs brought both NCUTPA and common law tortious interference claims against Share, a company that hired its former employee, Kuykendall, contrary to a noncompete agreement. 437 S.E.2d at 375. United prevailed on both its claims. The issue thus became whether United could recover "both punitive damages under its common law claim and untrebled compensatory damages and attorneys' fees in its unfair practices claim." *Id.* at 378.

The decision noted one purpose of the election of remedies doctrine is to "prevent double redress for a single wrong." *Id.* at 379 (quoting *Smith v. Oil Corp.*, 79 S.E.2d 880, 885 (N.C. 1954)). Therefore, "a party may not recover punitive damages for tortious conduct and treble damages for a violation of Chapter 75 based on that same conduct." *Id.* However, the imposition of punitive damages and an award of attorney's fees serve entirely different purposes. *Id.* at 380. Punitive damages are designed to punish willful conduct and to deter others from committing similar acts. *Rhyne*, 594 S.E.2d at 6. The purpose of attorney's fees in Chapter 75, however, is to "encourage private enforcement" of Chapter 75. *Kuykendall*, 437 S.E.2d at 379. An award limited to attorney's fees plus treble damages will often prove inadequate to punish and deter the type of willful conduct that leads to punitive damages at common law. *Id.* Consequently, the court determined that although treble damages and punitive damages were redundant, an award of attorney's fees under the NCUTPA and punitive damages under the plaintiff's common law claim was permissible. *Id.* at 380-81.

O&W contends the enactment of section 1D-20 of the North Carolina General Statutes (Westlaw through S.L. 2021-17 of the 2021 Legis. Sess.) represents the legislature's rejection of *Kuykendall*. Contrastively, Midlands argues section 1D-20 represents the codification of *Kuykendall* in that it provides treble damages and punitive damages may not both be recovered. The statute provides that "[a] claimant must elect, prior to judgment, between punitive damages and any other remedy pursuant to another statute that provides for multiple damages." *Id.*

Section 1D-20 was enacted in 1995, and *Kuykendall* has not been abrogated or overruled.  In a recent unpublished decision by the Fourth Circuit, *Driskell v. Summit Contracting Group, Inc.*, 828 F. App'x 858 (4th Cir. 2020), two of the three judges indicated section 1D-20 does not affect *Kuydendall*'s holding as to punitive damages and attorney's fees.

> Our dissenting colleague would hold that [section] 1D-20 effectively overruled [*Kuykendall*'s] 'mix-and-match approach' and thus blocks Driskell from recovering both awards.  But that provision—which was enacted in 1995 in an act establishing standards for punitive damages, . . . has never been construed to apply to attorney's fees . . . . It's true that Driskell's request for attorney's fees is "pursuant to" REDA [the Retaliatory Employment Discrimination Act], which provides for treble damages. But we think it doubtful that the Supreme Court of North Carolina would hold that REDA's separate allowance for an award of attorney's fees is a "remedy" in the way that § 1D-20 uses that term. After all, § 1D-20's title is "Election of extracompensatory remedies," and attorney's fees are strictly compensatory in that they reimburse a prevailing plaintiff's costs. The title of a statutory subsection, while "not controlling, [ ] does shed some light on the legislative intent underlying the enactment of that provision." *State v. Fletcher*, [ ]807 S.E.2d 528, 539 (2017).  And that light is (we think) sufficient here to reject the dissent's view.

*Id*. at 871 n.8.

While not binding precedent, we find the Fourth Circuit's majority position on this issue persuasive.  *See Cothran v. Brown*, 357 S.C. 210, 218, 592 S.E.2d 629, 633 (2004) (finding the reasoning of federal case law persuasive).

Additionally, South Carolina has taken a similar position on the issue.  In *Austin v. Stokes-Craven Holding Corp*., 387 S.C. 22, 691 S.E.2d 135 (2010), the buyer of a truck brought an action against the dealership for multiple claims, including fraud and various statutory claims.  *Id*. at 35, 691 S.E.2d at 141-42.  The jury awarded actual damages, punitive damages, and attorney's fees under a combination of

theories.  *Id*.  On appeal, our supreme court held that the buyer, Austin, could recover punitive damages, as well as attorney's fees and costs under the South Carolina Dealer's Act:

> [A] plaintiff may recover attorney['s] fees under a statutory claim in addition to punitive damages under a common law claim.  The rationale for this position is that an award for both does not amount to double recovery for a single wrong given attorney's fees are intended to make such claims economically viable for private citizens whereas an award of punitive damages is designed to punish wrongful conduct and deter future misconduct.

*Id*. at 56, 691 S.E.2d at 153.

The majority further opined:

> Furthermore, given the recovery of attorney's fees under the Dealer's Act is not duplicative of the award of punitive damages, we do not believe a decision in favor of Austin would violate the election of remedies doctrine's prevention of double redress for a single wrong.  As its name states, the doctrine applies to the election of "remedies" not the election of "verdicts." Thus, an award of attorney's fees and costs would merely serve to fully compensate Austin for pursuing his statutorily-authorized private right of action under the Dealer's Act, which we believe epitomizes the definition of a remedy.  *See Black's Law Dictionary* 1163 (5th ed. 1979) (defining "remedy" as "[t]he means by which a right is enforced or the violation of a right is prevented, redressed, or compensated").

*Id*. at 57, 691 S.E.2d at 153.

Based on all of the foregoing, we conclude the circuit court erred in requiring O&W to elect between punitive damages and attorney's fees.  Therefore, on remand, the final award should include actual damages, punitive damages, and attorney's fees in an amount to be determined by the circuit court.

## IV.   Offer of Judgment Interest

Finally, O&W maintains the circuit court erred in denying its request for interest on the offer of judgment—$280,000—to settle the case in April of 2015.  The circuit court denied O&W's interest request because, while O&W made an offer of judgment of $280,000, O&W elected recovery under the NCUTPA, and the amount of the attorney's fees award was lower than the offer to settle.[14]  O&W contends the amount the jury returned in its verdict—$2.38 million—should be used to decide whether O&W was entitled to offer of judgment interest, as opposed to using the reduced punitive damages award—$46,515—the court determined was appropriate.

Section 15-35-400(B) of the South Carolina Code (Supp. 2020) provides:

> Consequences of NonAcceptance.  If an offer of judgment is not accepted and the offeror obtains a verdict or determination at least as favorable as the rejected offer, the offeror shall be allowed to recover from the offeree: (1) any administrative, filing, or other court costs from the date of the offer until judgment; (2) if the offeror is a plaintiff, eight percent interest computed on the amount of the verdict or award from the date of the offer; . . . [15]

This court recently addressed this issue in *Garrison v. Target Corp.*, 429 S.C. 324, 377, 838 S.E.2d 18, 46 (2020) (*cert. granted*, S.C. Sup. Ct. Order dated October 19, 2020).  The court indicated the use of the term "determination" in the first sentence of Rule 68(b) in combination with the last phrase "eight percent interest

---

[14] The circuit court suggested O&W may not be entitled to offer of judgment interest under North Carolina law because only a defendant may make an offer of judgment there.  *See* Rule 68, NCRCP ("At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer . . . .").  However, because the issue would be procedural, not substantive, South Carolina law governs this question.  *See Nash v. Tindall Corp.*, 375 S.C. 36, 39, 650 S.E.2d 81, 83 (Ct. App. 2007) (stating procedural matters are determined in accordance with the law of the forum).

[15] Rule 68 of the South Carolina Rules of Civil Procedure contains identical language.

computed on the amount of the verdict or award from the date of the offer *to the entry of judgment*" indicated the final, posttrial award was the proper amount for computing offer of judgment interest. *Id*. at 378-79, 838 S.E.2d at 47. Likewise, we conclude the circuit court's analysis should have been performed using the posttrial award as opposed to the jury's verdict. However, because we reverse the circuit court's decision as to the election of remedies and remand the issue of attorney's fees, we instruct the court to reevaluate its decision as to the offer of judgment interest as may be necessary in light of the final award.

## CONCLUSION

We affirm the circuit court's reduction of the punitive damages award and reverse the circuit court's determination that O&W is required to elect between its punitive damages award and attorney's fees. We remand the issue of attorney's fees to the circuit court for analysis in accordance with the directives in this opinion. Because the award of offer of judgment interest may be affected by the decisions herein, we remand that issue to the circuit court as well. Consequently, the matter is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**GEATHERS and MCDONALD, JJ., concur.**